## Case No. 15,067.

### UNITED STATES v. FAIRCHILDS.

[1 Abb. U. S. 74;[1] 1 Am. Law T. Rep. U. S. Cts. 58; 7 Am. Law Reg. (N. S.) 306; 7 Int. Rec. 101; 15 Pittsb. Leg. J. 343.]

District Court, W. D. Michigan. Oct. Term, 1867.

CONSTITUTIONALITY OF BOUNTY AND PENSION LAWS — CLAIM AGENT'S COMMISSION.

1. Under the constitutional authority "to raise and support armies" (Const. art. 1, § S), congress has power to bestow bounties and pensions upon those who may engage in the military service of the United States.

2. This power embraces and authorizes an enactment making it an offense punishable in the national courts, to detain from a military pensioner any portion of a sum collected in his behalf, as his pension.

[Cited in U. S. v. Hall, 98 U. S. 356.]

3. Sections 12 and 13 of the pension act of July 4, 1864 (13 Stat. 389), limiting the fees of agents and attorneys for making out and causing to be executed the papers necessary under the act, and providing that the receiving of any greater compensation than that prescribed shall be punishable as a misdemeanor, are, therefore, constitutional.

[Cited in U. S. v. Marks, Case No. 15,721.]

Demurrer to an indictment.

The defendant, James H. Fairchilds, was indicted for having wrongfully withheld from one Penrose, a pensioner of the United States, a portion of a sum which the defendant, acting as agent for Penrose, had collected from the pension office, as being a pension to which Penrose was entitled. The indictment was founded upon sections 12 and 13 of the pension act of July 4, 1864 [13 Stat. 389], the substance of which is as follows: That any agent or attorney who shall, directly or indirectly, demand or receive any greater compensation for services under the act than that prescribed, or who shall contract or agree to prosecute any claim for a pension, bounty, or other allowance under the act for a percentage on the amount of the claim, or who shall wrongfully withhold from a pensioner or other claimant the whole or any part of the pension or claim allowed and due, shall be deemed guilty of a high misdemeanor, punishable by fine or imprisonment. The sum withheld was claimed and retained by defendant as his commission for services rendered by him to the pensioner.

[The indictment charges that Fairchilds wrongfully withheld $64.52 from Penrose, a pensioner, part of $174.52 collected and received by Fairchilds as pension money allowed and due Penrose from the United States. Penrose is a discharged soldier, and as such was entitled to a pension. He employed Fairchilds to obtain such pension, which Fairchilds did, and received from the pension office $174.52. Of this he paid Penrose $110, retaining and withholding the balance as compensation for services.][2]

The defendant demurred to the indictment upon the ground that the facts alleged did not amount to any offense.

A. D. Griswold, Dist. Atty., and E. S. Eggleston, for the United States.

Lucius Patterson, for defendant.

WITHEY, District Judge. It is argued that congress has no power, under the constitution, to define as an offense that which is charged against Fairchilds. The question is, therefore, one of the constitutional power of congress. Sections 12 and 13 of the act of July 4, 1864, are claimed to be unconstitutional.

---

[1] [Reported by Benjamin Vaughn Abbott, Esq., and here reprinted by permission.]

[2] [From 7 Am. Law Reg. (N. S.) 306.]

It is argued by the learned counsel for Fairchilds that Fairchilds was the agent of Penrose and not of the government, and the district attorney does not deny the proposition. From this it is claimed that the transaction was purely between private citizens of a state, affected them only, and in nowise the United States government, nor any officer or agent of the United States; that these citizens were at liberty to make such bargain as they pleased in reference to the amount of compensation for services rendered by one for the other, whether that service related to pension money or otherwise; and that no law passed by congress can, in any regard, control or affect the parties or their rights or dealings under such contract. That when once the pension office paid the money over to Fairchilds, as the agent of Penrose, it was the property of Penrose, and he alone can call his agent to account for the same; and if any restriction can be placed upon the question of compensation of the agent, or any penalty be imposed on the agent for retaining or wrongfully withholding the whole or any portion of such moneys, only state laws can impose such restrictions and penalty. That there can be no offense by a citizen which both sovereignties can punish; if the one has the power, the other has not. That the state may exercise the power, and, therefore, the national government cannot.

It must be conceded that the line between the state and the national jurisdiction is not always clearly defined, and great care is demanded of the courts in passing upon a question like that involved in this case. The congress of the United States has, by the passage of the act in question, declared that the power exists under the constitution of the United States to protect the fund for the claimant, and limit the compensation which an agent or attorney shall receive for services rendered to one entitled to a pension in procuring the same. To warrant the courts in setting aside this law as unconstitutional, the case must be so clear that no reasonable doubt can be said to exist. Fletcher v. Peck, 6 Cranch [10 U. S.] 128. And especially is this so when the question is to be decided by a court of limited or inferior jurisdiction.

The constitutionality of the act of congress is, however, made a question, and there is no reason why this court should not consider and pass upon it. In construing the extent of the powers conferred by the constitution upon congress, we are to look at the language of the instrument which confers those powers in connection with the purposes for which they were conferred. What, then, are the constitutional provisions under which it is claimed congress could pass the act defining the offense charged in this case? The words of the constitution are: "Congress shall have power to raise and support armies," and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by the constitution in the government of the United States." Article 1, § 8.

The supreme court of the United States, in McCulloch v. Maryland, 4 Wheat. [17 U. S.] 316, hold that "although among the enumerated powers of government we do not find the word 'bank' or 'incorporation,' we find the great powers to lay and collect taxes; to borrow money; to regulate commerce; to declare and conduct war; and to raise and support armies and navies;" and that "a government, intrusted with such ample powers, on the due execution of which the happiness and prosperity of the nation so vitally depend, must also be intrusted with ample means for their execution;" that the constitution of the United States "does not profess to enumerate the means by which the powers it confers may be executed;" that "the government which has a right to do an act, and has imposed upon it the duty of performing that act, must, according to the dictates of reason, be allowed to select the means."

By the aid of the profound views thus expressed by Chief Justice Marshall, let us examine the question before us. Congress is expressly empowered to "raise and support armies," and we shall do well to remember that congress is to be allowed, according to the ruling I have read, to select the means by which armies are to be raised and supported. In selecting the means to accomplish these things, we find pay, bounties, and pensions are stipulated and promised to the soldier. Through these means, thousands who could not otherwise afford to leave all and enter the military service, come forward, enlist, and do battle to protect and defend the rights, interests, and honor of the nation. By the use of these means the government is enabled readily to raise an army and fill its ranks from time to time.

Pensions and bounties are not given for the support of the army, but promised by way of inducement and reward for the citizen becoming a soldier and faithfully serving his country. There is no express power given in the constitution to congress to give pensions or bounties to the soldier. The right is claimed, however, and has never been doubted as being within those incidental or implied powers flowing from the expressly granted or enumerated power, to "raise and support armies." They are among the means which it selects in the exercise of a granted power, and I apprehend congress is the sole judge as to what means are appropriate and to be selected in the exercise of any of its enumerated powers. Most of the penal laws of the government of the United States rest upon the incidental or implied powers of congress to punish violation of its laws. It was well argued by the district-attorney, that under the power to regulate commerce, congress has passed laws regulating vessels engaged in carrying passengers, in prescribing the

size of state-rooms and otherwise, as well as in requiring vessels to convey disabled American seamen found in a foreign port to this country. And, again, laws forbidding the sale of bounty certificates, as well as many other statutes of a like character, none of which have been held unconstitutional, or judicially questioned, so far as I know; and yet these statutes find no sanction in the constitution of the United States other than in the implied powers, and the general provision "to make all laws which shall be necessary and proper for carrying into execution" the powers vested in the government.

If, then, congress may promise bounties and pensions to the nation's soldiers, may it not, by appropriate penalties, guard those rewards against him who would divert them in any manner away from the beneficiary? If the soldier may lawfully be promised bounties and pensions, and if, from his occupation of arms and want of the requisite knowledge, he must employ another to prepare the requisite evidence to the pension office to bring him within the law and secure the promised bounty and pension, may not the government say to such employee: This money we pay to you for one of our soldiers, and you must pay it over to him intact; failing in which you make yourself liable to fine and imprisonment? True, the employee is the agent of the soldier in all that he does for him, but he must deal with the government in the exercise of that agency; and in taking such employment to secure for the discharged soldier his bounty or pension, he knows the restrictions placed by congress upon the compensation he can receive, and the prohibition against his retaining any portion of the funds from the soldier. These provisions may be regarded as the terms and conditions upon which the government consents to recognize the agency of the person employed by the soldier, and pays the money over to such agent. Congress must alone be the sole judge of what is both necessary and expedient on any subject within the range of its powers to act.

"To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end." Congress has employed a means in raising and supporting armies, in addition to pay, clothing, &c.,—bounties and pensions; and has sought by appropriate penalties to guard these moneys through all channels from the nation's treasury into the hands of the pensioner.

Said the supreme court, in the case already referred to: "Let the end be legitimate; let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional."

I have endeavored to show not only that the end which the statute under consideration seeks is legitimate and within the scope of the constitution, but that the means employed by congress are appropriate and adapted to the end of raising and supporting armies, and therefore within the powers of congress under the constitution. Without entering upon a discussion whether the state may, in view of the legislation of congress, impose a penalty upon the citizen for withholding the money in question, and alone regulate and control contracts between citizens of the state in reference to compensation for such services as those by Fairchilds for Penrose, it will be recollected that a law of congress, if constitutional, prohibits and supersedes all state legislation on the same subject (1 Parker, Cr. R. 67); that while the state law might control in reference to these questions, in the absence of any exercise by congress of its constitutional powers on the subject, yet so far as congress does constitutionally act, the state laws are so far superseded, and the citizen cannot be punished by both sovereignties for the same offense. Sections 12 and 13 of the act of congress are held to be constitutional. The demurrer is overruled, with leave to the defendant to plead to the indictment.

Demurrer overruled.